JOHN R. BORGSTEDE et al. *v.* JOHN L. LEWIS, Sheriff.

The sheriff, by consent of parties, sold a steamer which had been seized on a writ. The terms of sale were a portion cash, and the balance for satisfactorily endorsed paper at eight months. At the time of the sale, inqiury was made by the sheriff as to the solvency of the proposed endorser of the note, who was considered good by the persons inquired of. The note was protested at maturity and suit brought upon it, in which nothing was recovered on account of the insolvency of the parties to the note.

The plaintiffs then brought suit against the sheriff, for his neglect in not taking proper security. The plaintiffs had made no objection to the endorser until after the failure to collect the money of him on execution. *Held:* that the sheriff had shown due diligence at the time the note was taken, and that although the evidence showed the endorser to have been insolvent at the time, the fact was not generally known amongst the commercial community.

APPEAL from the Fifth District Court of New Orleans, *Buchanan,* J. *Ogden* and *Duncan,* for plaintiffs. *J. R. Grymes,* for defendant. The judgment of the court was pronounced by

SLIDELL, J. Under writs of execution in the case of *Borgstede & Co.* v. *Steamer Duroc,* and other cases, that vessel was seized by the sheriff, *John L. Lewis,* and was advertised, pursuant to the agreement of parties, to be sold at sheriff's sale on the 22d April, 1848, at the following terms: one-half cash and the balance of price at eight months, the purchaser to give a note endorsed to the satisfaction of the sheriff. The sale took place on that day; and on the boat being knocked down to *Burgess & Co.,* the deputy sheriff asked them who was to be their endorser; and they offering the name of *Lindley* and *Russell,* the deputy, being still upon the stand, applied for information to *C. M. Randall, Esq.,* an attorney at law, who was in attendance at the sale, and who represented several of the creditors of the vessel interested in the fund to be produced by the sale. What occurred is thus stated by the deputy, on his examination at the trial of the present cause : " In making adjudications on credit, he is in the habit of ascertaining from the plaintiffs or parties interested the standing of the party offered as security ; and in this case, *Charles M. Randall, Esq.,* who witness knew was interested for some of the *parties int*erested, and who was present at the sale, being asked by witness if he knew *Lindley* and *Russell,* and if they were good, said he did, and that *Lindley* and *Russell* were perfectly good, and there could be no objections to them. Witness knows that the acquaintance and practice of *Charles M. Randall* among the western produce merchants in the Second Municipality was very extensive ; that the extensive acqaintance of *Randall* with these western produce merchants was the reason why witness applied to him for information. He has had occasion in other cases to apply to *Charles M. Randall* as to the character of other houses, and he has always found his opinion to be correct. *Randall* did not represent *Borgstede & Co.,* but some of the intervenors." Upon cross-examination by the plaintiffs, the witness stated that *Lindley* and *Russell* were accepted by him upon the stand, upon the inquiries made of *Randall* and without further inquiry ; that he was still deputy sheriff, and his business is nearly altogether in the office. Upon reëxamination by the plaintiff, he testified that no objection was ever made to *Lindley* and *Russell* as security until the note was protested.

On the 28th April, 1848, the sheriff made return of the writ, stating the amount of cash received, and that the note taken for the residue was endorsed by *Lindley* and *Russell*. On the same day, *Borgstede & Co.* obtained an order of court assigning a day for the hearing of the various claimants, and the judicial distribution of the fund. On the 26th of May a decree of distribution was rendered.

BORGSTEDE
*v.*
LEWIS.

Upon the maturity of the note, which remained in the sheriff's hands, it was protested; he obtained judgment and execution against the makers and endorsers, upon which nothing could be made. Thereupon, the plaintiffs brought this suit against the sheriff, to make him liable for the amount of their interest in the note, alleging in their petition, "that *Lindley* and *Russell* were, at the time when they were thus accepted by the sheriff as endorsers, and for some time previous thereto, notoriously unable to meet their engagements and insolvent—all which facts with reasonable diligence were known to the defendant." The cause was heard by the district judge, who after discussing the case in a written opinion, which gives us the benefit of his view of the evidence, rendered judgment for the defendant."

In commenting upon the evidence, the district judge remarks as follows: "On the part of the plaintiffs, two witnesses, *William P. Converse* and *Thomas R. Wolfe*, have proved that *Lindley* and *Russell* were embarrassed and unable to meet their engagements previous to the 22d April, 1848. But one of these witnesses was the particular friend of *Lindley* and *Russell*, and the other was their legal adviser; and the knowledge of both on the subject was derived from confidential communications made to them by *Lindley* and *Russell*. And although *Converse* declares his belief that the insolvency of *Lindley* and *Russell* was generally known in March, 1848, yet this fact is contradicted by the evidence of *Shaw* and *Thorpe*, witnesses of the plaintiffs, the latter, *Lindley* and *Russell's* book-keeper, and also by the evidence of *Davis*, *Sloane*, *Burgess*, *Frost*, *Kennedy*, and *Creevy*, witnesses of defendant; all of them merchants in the same line of business as *Lindley* and *Russell*, and their near neighbors. The whole evidence in the cause leaves the decided impression on my mind that the insolvency of *Lindley* and *Russell*, if they were in fact insolvent on the 22d April, 1848, was not notorious at that time; but on the contrary, was unknown to the commercial community at large."

The district judge further observed that "the present plaintiffs, although they received a dividend out of the cash proceeds of the sale of the *Duroc*, and must have known who were the endorsers for the credit portion, do not appear to have complained until fully a year after the maturity and dishonor of the note; a fact of itself strongly adverse to the imputed notorious insolvency of *Lindley* and *Russell*."

The above summary of the evidence, as far as it goes, seems to us substantially correct; and when we add to it the undisputed fact, that the standing of *Lindley* and *Russell* had been high previous to the spring of 1848—the circumstance that their embarrassment, although known to a few intimate friends, had been covered up from the public by an agreement with the holder of a bill on which they were endorsers to waive protest; the fact that *Stewart*, a western produce merchant and their neighbor, loaned them money on the 20th April, and, as he testified, did not recollect having any apprehensions then of their solvency, otherwise he thought he would not have done so; and especially the information given to the deputy sheriff by *Mr. Randall*—we have no hesitation in coming to the conclusion that the judgment cannot be disturbed. For the fair

result of the evidence is, that the sureties were apparently persons of responsibility; and that the sheriff exercised, under the circumstances, a reasonable caution in receiving them.

As this subject of the responsibility of sheriffs is one of much importance, both to the public and to those officers, we have considered it proper to look with some care into the adjudged cases; and a brief review of them will illustrate the correctness of the judgment which we now affirm.

*Hindle* v. *Blades*, 5 Taunton 225, was an action against the sheriff for not taking from a tenant, who replevied in case of a distress for rent, two responsible sureties upon the bond. It appeared from the evidence, that one of the sureties, who were taken by the sheriff in October, 1812, was a bankrupt in 1810, and the other had been bankrupt in 1811. But both the sureties were in apparent credit in 1812. It did not appear that the sheriff had made inquiry, except of the surety himself, who stated, when he executed the bond, that he was worth £600 or £700. The jury found a verdict for the defendant, under the direction of the chief justice, who thought, that if at the time of taking the bond the sureties were apparently responsible, that was sufficient. Upon a motion for a new trial, it was argued for the defendant that the statute required " two responsible" persons; and that it was at the peril of the sheriff to see that those whom he accepts are such, and that it would not suffice that they were apparently responsible. That the sureties are selected by the sheriff; that the landlord cannot tell who they are, nor examine their sufficiency; and therefore it is incumbent on the sheriff to see that he selects proper persons. The new trial was refused. Mansfield, C. J., said: I cannot think the statute meant to throw on the sheriff this *onus*. Suppose the sheriff had taken an eminent banker as surety a week before his bankruptcy, when no one in the world had the slightest reason to suspect his circumstances. According to the same doctrine, the sheriff would have been liable for taking him as surety. Heath, J., said: The mischief before the statute was, that the sheriff used to accept mere men of straw for sureties. But the sheriff cannot cast up the man's accounts, to see the real state of his property. It was not necessarily incumbent upon the sheriff to make inquiries respecting these persons; he might possibly know them before. We ought not to load the sheriff with more duties and burthens than he is already charged with. Dallas, J., said: The question is, whether the sheriff, who is bound to take responsible sureties, has not done so? He makes proper inquiries, and finds that these are considered as responsible persons. It cannot be that the sheriff should be bound to know that which nobody else knows; and if the rest of the world trusts the surety, it is a sufficient justification to the sheriff if he also considers him a responsible person.

Although the judges in this case took somewhat different views of the facts, and some of their suggestions, unless restrained by referring them to the case under consideration, might seem to sanction too large a rule respecting the caution to be required from sheriffs; yet, upon the whole, the true point upon which the case turned in favor of the sheriff would seem to have been the apparent repute or standing of the sureties as to solvency when the sheriff took them.

The case of *Sutton* v. *Waite*, 8 J. B. Moore, 27, was an action for negligence brought against his replevin clerk by the sheriff, who had been himself held liable in a previous suit for taking insufficient pledges on a replevin bond. The clerk was considered as justified in having taken a surety on his *general* reputation; and Mr. Justice Park observed, that if the same evidence had been

given in the action against the sheriff, he would have been exonerated. He referred to the case of *Hindle* v. *Blades*, as establishing the doctrine that if the sureties were apparently responsible, it is sufficient to exonerate the sheriff.

BORGSTEDE
*v.*
LEWIS.

The opinion of Chief Justice Abbott in *Scott* v. *Waithman*, 3 Starkie 168, to be properly understood, must be taken in connection with the facts proved at the trial, that the surety not long before he was accepted by the sheriff, had been arrested on mesne process, and other writs against him had passed through the sheriff's hands. We think the ruling in that cause is fairly given by the reporter, to wit, that it is sufficient on the part of the sheriff who has taken a replevin bond to show that the sureties were apparently persons of responsibility, although they were not actually such, unless it appear that the sheriff had notice of the fact, or neglected the means of information within his power, and did not act under the circumstances, and considering the information which he had, with a reasonable degree of caution. It may also be inferred from that case, that the general reputation as to the want of credit of the sureties in the neighborhood of their residences, is admissible evidence against the sheriff.

In *Jeffery* v. *Bastard*, 4 Adol. & Ellis, 823, it was held, that where persons of respectable appearance are brought to the replevin clerk as sureties by the attorney's clerk on behalf of the party replevying, their circumstances being unknown both to the attorney's clerk and the replevin clerk, and the latter causes the sureties to make affidavit in detail as to their sufficiency, with which he is satisfied, and an action is afterwards brought against the sheriff for taking insufficient sureties, the jury may properly find that the inquiry made does not excuse the sheriff; and accordingly a motion for a new trial was refused. In that case no witnesses acquainted with the circumstances or general reputation were called for the defence, so that, as Lord Denman remarked, no *prima facie* case of respectability appeared. He stated the law, as collected from the adjudged cases, to be that the sheriff is to exercise a reasonable discretion and caution in receiving sureties. He disapproved the reliance of the clerk on the mere testimony of the sureties themselves, who were otherwise entirely unknown to him; but states that if he had used other means of inquiry, as for example, by the attendance of a person from the neighborhood in which the sureties lived, the sheriff would then have had the benefit of Chief Justice Mansfield's observation in *Hindle* v. *Blades*. The other judges concurred that it was a question for the jury whether the sheriff had exercised a reasonable discretion; and Coleridge, J., remarked, that if the sheriff is fixed with knowledge of the real state of facts, he is responsible according to such knowledge; but where he has it not, he is bound to make a reasonable inquiry into the apparent responsibility of the sureties offered.

In *Rice* v. *Hosmer*, 12 Mass. 130, the court said: If the sheriff takes two sureties on a bail bond, who are reputed of sufficient ability, although they may afterwards become insolvent and unable to pay the debt, the sheriff is not liable.

In *Teasdale* v. *Kennedy*, 1 Bay, 333, which was an action on the case for taking insufficient bail, the court said: Every man who undertakes an office ought to perform the duties of it strictly, and to use all due diligence and care in the execution of it; particularly a sheriff who is an officer of great trust; and if any man, on account of his omission or neglect, suffer by it, he is liable in damages. But on the other hand, where he discharges his duty faithfully, he is highly protected in law. In the present case, the law has been very properly stated on behalf of the defendant. If a sheriff takes as bail a man who is notoriously insolvent, in doubtful circumstances, or without a fixed residence, or the

BORGSTEDE
*v.*
LEWIS.

like, he is answerable.  But where a man is a householder, in apparent good circumstances, to refuse such a man as bail would be an abuse of office, for which he would be answerable.

It is therefore decreed, that the judgment of the district court be affirmed, with costs.

ROST, J., dissenting.  Under articles 3033 and 3011, C. C., all sureties offered by parties in contracts, or taken in the course of judicial proceedings, must have property sufficient to answer for the amount of the bond they sign: *avoir des biens suffisants*, according to the French text.

These articles might very properly have received the interpretation that all sureties, whether judicial or not, must have tangible and real property unincumbered to a sufficient amount to secure the bond.  I admit that a different interpretation has prevailed; but it is still necessary to ascertain that the surety offered has sufficient property, movable or immovable, after paying his debts, to satisfy the bond; under these textual provisions of law, the inquiry which the sheriff was required to make was, not whether the surety had the reputation to be solvent, but whether he was really so.  To ascertain this fact, besides resorting to the other means of information within the reach of the sheriff, he should have put the person offered on his oath.

. This is the usual practice with sureties taken by the judge, and I am unable to perceive any good reason why it should not be followed by the officers of court.  Had the surety in the present case been called upon to swear to his solvency, the evidence induces me to believe that he would have refused to take the oath; and as it was conceded in argument that there is nothing in the circumstances of this case to distinguish it in a legal point of view from ordinary cases of judicial suretyship, I am of opinion that the sheriff ought to be bound.